UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JSC MCC EUROCHEM and EUROCHEM TRADING GMBH, <br><br>       Petitioners, <br><br> v. <br><br> SANDEEP CHAUHAN, <br><br>       Respondent. | Case No. 3:17-mc-00005 <br><br> Judge Aleta A. Trauger <br> Magistrate Judge Newbern |

## <u>ORDER</u>

Respondent Sandeep Chauhan has filed a motion asking the Magistrate Judge to reconsider the Court's order that he submit to limited discovery for use in foreign proceedings pursuant to 28 U.S.C. § 1782(a) or, in the alternative, that the Court stay discovery pending resolution of his concurrently filed motion for review of the Magistrate Judge's order (Doc. No. 29) or the ongoing jurisdictional appeals in the British Virgin Islands, one of the forums in which the discovery the Court ordered would be used. (Doc. No. 26, PageID# 1530; Doc. No. 43, PageID# 2140.) Petitioners JSC MCC EuroChem and EuroChem Trading GMBH (EuroChem) filed a response in opposition (Doc. No. 36), to which Chauhan filed a reply (Doc. No. 43). EuroChem has filed a sur-reply. (Doc. No. 48.) EuroChem also filed a notice of further developments in foreign proceedings (Doc. No. 49) to which Chauhan responded (Doc. No. 52). For the reasons offered below, Chauhan's motion for reconsideration, or alternatively, for a stay of discovery (Doc. No. 25) is DENIED.

# I.     Factual and Procedural Background

This action arose from EuroChem's petition, under § 1782(a), to take discovery from Chauhan for use in several ongoing foreign proceedings. As set out in the Court's prior order, EuroChem alleges that many companies—including Dreymoor Fertilisers Overseas (Pte.) Limited (Dreymoor), where Chauhan was previously employed[1]—paid bribes to two of its former executives, Valery Rogalskiy (Rogalskiy) and Dmitry Pomytkin (Pomytkin). (Doc. No. 24, PageID# 1503–04.) In its petition, EuroChem sought an order from this Court allowing it to take Chauhan's deposition and requiring him to produce documents related to transactions with Dreymoor and communications between him and Rogalskiy or Pomytkin. (Doc. No. 3-1, PageID# 65, 75–76.) EuroChem argued that the requested discovery would be used in litigation taking place in the British Virgin Islands (BVI), Cyprus, and London, and in other contemplated proceedings. (Doc. No. 1, PageID# 1.)

On November 3, 2017, this Court ordered Chauhan to submit to discovery under 28 U.S.C. § 1782 for use in the BVI and Cyprus proceedings. (Doc. No. 24.) The Court found that, although many of the defendants in the BVI proceeding were involved in an appeal of the BVI court's jurisdiction, other defendants against whom the discovery could be used—like Rogalskiy and his company Gianthill Management Ltd. (Gianthill)— had conceded jurisdiction. (*Id.* at PageID# 1513–14.) The Court also found that the discovery could be used in the Cyprus action, in which EuroChem sought a world-wide asset-freeze injunction against Rogalskiy and companies that he controlled. (*Id.* at PageID# 1514.) Because EuroChem conceded that its proposal to use the requested discovery in a London arbitration proceeding was not essential to its application, the Court declined to find that the discovery could be used there. (*Id.* at PageID# 1509–10.) Finally,

---

[1]     Chauhan now refers to Dreymoor as his "former employer." (Doc. No. 52, PageID# 2252.)

the Court found that EuroChem's contemplated proceedings in unspecified locations were too vague to support an order that discovery be taken under § 1782. (*Id.* at PageID# 1511.) The Court granted EuroChem's petition to take Chauhan's deposition, but narrowed the scope of document production to the timeframe of 2010 through 2014 and "those documents that are in Chauhan's possession, custody, or control in the Middle District of Tennessee." (*Id.* at PageID# 1523–24.)

Chauhan's motion for reconsideration argues that the Court was misinformed about the nature of the BVI proceeding and that both the BVI proceeding and the Cyprus proceeding have evolved such that the discovery the Court ordered would no longer be of use in either forum. (Doc. No. 26, PageID# 1531–32.) The Court stayed discovery pending consideration of Chauhan's motion. (Doc. No. 33.) Chauhan requests that the Court further stay discovery under Federal Rule of Civil Procedure 26(c)(1) pending resolution of Chauhan's motion for review (Doc. No. 29) or the jurisdictional appeals in the BVI, whichever is later. (Doc. No. 26, PageID# 1530.)

Chauhan claims that the only defendants in the BVI proceeding who have not challenged the BVI court's jurisdiction through appeal "have defaulted and currently have judgments rendered against them." (*Id.* at PageID# 1531.) Therefore, Chauhan reasons, the Court was mistaken when it concluded that some defendants against whom the § 1782 discovery could be used "would remain in the BVI Litigation regardless of whether the jurisdictional challenges succeeded." (*Id.* at PageID# 1537.) Chauhan also points out that, despite the Court's finding to the contrary, Rogalskiy was one of the defendants who had challenged the BVI court's jurisdiction. (*Id.* at PageID# 1538.) Chauhan argues that, because the Court misunderstood the procedural posture of the BVI proceeding, relief from the Court's order is warranted under Federal Rule of Civil Procedure 60(b)(1). Fed. R. Civ. P. 60(b)(1) (authorizing courts to relieve a party from an order due to "mistake, inadvertence, surprise, or excusable neglect"); (Doc. No. 26, PageID# 1537–38).

According to Chauhan, "[t]he circumstances have also changed with respect to the Cyprus proceeding." (Doc. No. 26, PageID# 1532.) Chauhan claims that the Cyprus court "heard the evidence" presented in connection with EuroChem's request for an asset-freeze order "and the hearings are closed." (*Id.*) Therefore, Chauhan argues, there is no longer an opportunity for EuroChem to use the § 1782 discovery in Cyprus and the Court should reconsider its order under Rule 60(b)(2). Fed. R. Civ. P. 60(b)(2) (authorizing courts to relieve a party from an order when confronted with "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)); (Doc. No. 26, PageID# 1532, 1539).

Chauhan further argues that, even if the evidentiary hearing in the Cyprus proceeding were still open, that proceeding is not "adjudicatory" and, therefore, is not a qualifying "tribunal" under § 1782. 28 U.S.C. § 1782(a); (Doc. No. 26, PageID# 1532). Chauhan acknowledges that he did not raise this argument in his brief opposing EuroChem's petition for § 1782 discovery, but claims that he had no reason to do so because he believed that EuroChem was also seeking § 1782 discovery for use in a separate (concededly adjudicatory) contempt proceeding in Cyprus. (Doc. No. 26, PageID# 1540.) Given that EuroChem "abandoned that part of its Application after Chauhan had submitted [his] opposition," Chauhan argues that it is appropriate for the Court to consider under Rule 60(b)(6) his argument that the asset-freeze proceeding alone is not an "adjudicative" proceeding within the meaning of § 1782. Fed. R. Civ. P. 60(b)(6) (authorizing courts to relieve a party from an order for "any other reason that justifies relief"); (Doc. No. 26, PageID# 1540).

## II. Legal Standard

Federal Rule of Civil Procedure 60(b) authorizes the Court to "relieve a party or its legal representative from a[n] . . . order . . ." in certain circumstances. Fed. R. Civ. P. 60(b). In this motion, the relevant circumstances argued by Chauhan are "mistake," "newly discovered evidence," and "any other reason that justifies relief." *Id.*; (Doc. No. 26, PageID# 1537–40). Because "public policy favor[s] finality of judgments and termination of litigation," movants under Rule 60(b) face a heavy burden of proving their entitlement to relief "by clear and convincing evidence." *Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 454 (6th Cir. 2008) (quoting *Blue Diamond Coal Co. v. Trs. of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001)).

Although "[t]he Federal Rules do not specifically provide for a 'Motion to Stay Discovery,'" this Court has found that such a motion should be treated as one for a protective order under Federal Rule of Civil Procedure 26(c)(1). [2] *Cockrill v. Mortg. Elec. Registration Sys.*, No. 3:13-0031, 2013 WL 1966304, at *2 (M.D. Tenn. May 10, 2013). That rule allows the Court to issue a protective order halting discovery for "good cause." Fed. R. Civ. P. 26(c)(1)(A). The

---

[2] The parties disagree about the standard that governs Chauhan's motion to stay discovery. Chauhan argues that a stay is appropriate upon a showing of good cause and that, in the context of § 1782, courts apply the same four factor test "used to consider a stay of the enforcement of a civil judgment pending appeal." (Doc. No. 26, PageID# 1533 (citing *In re Chevron Corp.*, 709 F. Supp. 2d 283, 300–10 (S.D.N.Y. 2010) and *In re Roz Trading Ltd.*, Civ. No. 1:06-CV-02305, 2007 WL 120844, at *1–3 (N.D. Ga. Jan. 11, 2007)).) EuroChem responds that the cases Chauhan cites to support application of the four factor test involved § 1782, but "they also involved pending appeals, which is why that standard was applied in those instances." (Doc. No. 36, PageID# 1844.) EuroChem further argues that a stay of discovery is only properly ordered upon a "strong showing" that discovery should be denied. (*Id.* (quoting *Cockrill v. Mortg. Elec. Registration Sys.*, No. 3:13-0031, 2013 WL 1966304, at *2 (M.D. Tenn. May 10, 2013)).) Because the Court's order is not on appeal, the Court finds that the four-factor test Chauhan cites is not relevant. Further, the Court need not determine whether Chauhan is required to make a "strong showing" or a "showing" of good cause because Chauhan has failed to meet the more lenient of the two standards.

movant bears the burden of showing good cause, *In re FirstEnergy S'holder Derivative Litig.*, 219 F.R.D. 584, 587 (N.D. Ohio 2004), but ultimately, "[a] stay of discovery for any reason is a matter ordinarily committed to the sound discretion of the trial court." *Bolletino v. Cellular Sales of Knoxville, Inc.*, No. 3:12-CV-138, 2012 WL 3263941, at *1 (E.D. Tenn. Aug. 9, 2012) (citing *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)); *see also Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999) (explaining that "[t]rial courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined."). In ruling on a motion to stay discovery, the Court weighs "the burden of proceeding with discovery upon the party from whom discovery is sought against the hardship which would be worked by a denial of discovery." *Lewis v. Loftin*, No. 16-2726-dkv, 2017 WL 5505337, at *1 (W.D. Tenn. Mar. 1, 2017) (quoting *Osman v. Mission Essential Pers., LLC*, No. 2:11-CV-577, 2012 WL 1831706, at *1 (S.D. Ohio May 18, 2012)); *see also Bolletino*, 2012 WL 3263941, at *1. "The broad authority to grant a stay extends to 28 U.S.C. § 1782 proceedings." *In re Alves Braga*, 789 F. Supp. 2d 1294, 1307 (S.D. Fla. 2011).

## III. Analysis

### A. Chauhan's Motion for Reconsideration

Chauhan argues that there are three reasons that the Court should reconsider its order. First, Chauhan invokes Rule 60(b)(1) to claim that the order was based on a mistaken view of the status of the BVI proceeding, specifically, that "'other defendants' would remain in the BVI Litigation regardless of whether the jurisdictional challenges succeeded[] [and] . . . that Mr. Rogalskiy had not challenged the BVI court's jurisdiction . . . ." (Doc. No. 26, PageID# 1537.) Second, Chauhan argues that "changed circumstances in the Cyprus Action have undercut Eurochem's argument" and warrant reconsideration under Rule 60(b)(2). (*Id.*) Finally, Chauhan states that "this Court may

also reconsider the Order with respect to the Cyprus Action under 60(b)(6) because EuroChem's position has changed." (*Id.* at PageID# 1540.) The Court considers each argument in turn.

### 1. Mistake of Fact

Under Rule 60(b)(1), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The Sixth Circuit holds that "a Rule 60(b)(1) motion is intended to provide relief in only two situations: (1) when a party has made an excusable mistake or an attorney has acted without authority, or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *United States v. Reyes*, 307 F.3d 451, 455 (6th Cir. 2002). Here, Chauhan argues that the Court has made a substantive mistake of fact as to the status of the BVI proceeding. (Doc. No. 26, PageID# 1538.)

Both of the alleged factual inaccuracies relate to the Court's analysis of whether the § 1782 discovery EuroChem seeks would be usable in the BVI proceeding. The Court found that,

> while some foreign defendants in the BVI proceeding, including Dreymoor, have challenged the court's jurisdiction, others have conceded jurisdiction. (*See* Doc. No. 2, PageID# 25.) EuroChem argues that the requested discovery can be used to develop its case against those defendants regardless of the appeal's outcome. For example, Rogalskiy does not contest the BVI court's jurisdiction. (Doc. No. 16, PageID# 1376; Doc. No. 23, PageID# 1472:13–15.) Giantihill, a BVI-based company, is also a defendant to the action. (Doc. No. 2, PageID# 25; Doc. No. 15-1, PageID# 1296.) Thus, even if Dreymoor's jurisdictional challenge is successful, EuroChem could still use the requested discovery in its claims against other defendants. *See Mees*, 793 F.3d at 298; (Doc. No. 16, PageID# 1376.) The § 1782 discovery is therefore "for use" in the BVI proceeding, regardless of the outcome of Dreymoor's jurisdictional appeal. *See* 28 U.S.C. § 1782.

(Doc. No. 24, PageID# 1513–14.)

The first alleged mistake of fact is that "'other defendants' would remain in the litigation regardless of whether the jurisdictional challenges succeeded." (Doc. No. 26, PageID# 1537.) Chauhan asserts that "the only four BVI defendants who have not challenged the court's

7

jurisdiction have already defaulted and had judgment rendered against them" and, therefore, "Eurochem is unable to use the Chauhan evidence against Dreymoor, Mr. Rogalskiy, or **any other** defendant." (*Id.* at PageID# 1538 (emphasis in original).)

Chauhan has not met his burden of showing that the Court's order was mistaken on this basis. Even if it is true that the only defendants in the BVI proceeding who have not challenged jurisdiction have had judgments entered against them, Chauhan has not shown that the judgments were entered before the Court issued its order.[3] It is also not clear from Chauhan's argument that the only defendants who have not challenged the BVI court's jurisdiction have had judgments entered against them. EuroChem argues that Chauhan's description of the BVI case's procedural posture is "plainly wrong" and that there are defendants in the BVI proceeding who have neither conceded jurisdiction nor had judgment entered against them. (Doc. No. 36, PageID# 1851.) EuroChem states that "[n]either a default nor a judgment has been entered against Livingston" (Doc. No. 36, PageID# 1853) or Pomytkin (Doc. No. 48, PageID# 2224), and Darlow Panama has defaulted but judgment has yet to be entered against it (Doc. No. 36, PageID# 1854).

In his reply, Chauhan does not dispute EuroChem's description of the status of those defendants, which contradicts his own argument. Instead, Chauhan argues that "in [no] case will EuroChem be able to use Chauhan's discovery" because (1) Pomytkin "is not a proper defendant in the BVI Litigation" and (2) the proceedings against Livingston and Darlow Panama are either currently, or about to be, stayed. (Doc. No. 43, PageID# 2143.) This shift in argument represents

---

[3] Chauhan cites the declaration of Brian Childs in support of his contention that the Court's order relied on the mistaken belief that defendants remained active in the BVI proceeding in spite of the pending jurisdictional appeal. (Doc. No. 26, PageID# 1538 (citing Doc. No. 28, PageID# 1646, ¶ 8(a)).) That declaration offers a summary of the "status" of the defendants in the proceeding, which includes a list of the "Defaulted Defendants," but it does not indicate when those defendants had default judgments entered against them. (Doc. No. 28, PageID# 1646–47.)

8

a transition away from a mistake of fact based argument under Rule 60(b)(1) and towards a newly discovered evidence/changed circumstances argument under Rule 60(b)(2). Out of an abundance of caution, the Court therefore analyzes this newly presented argument in the context of Rule 60(b)(2) below.[4]

Chauhan and EuroChem agree that, at the time the Court's order issued,[5] Rogalskiy had "challenged the BVI court's jurisdiction, albeit separately from the other defendants" and, therefore, the Court's order incorrectly stated that Rogalskiy had conceded jurisdiction. (Doc. No. 26, PageID# 1538; Doc. No. 36, PageID# 1851.) It is the significance of that error that the parties dispute.[6] EuroChem claims that the error was "not material" because, consistent with the reasoning of the Court's order, "the Chauhan evidence is usable in the BVI against numerous other defendants who have not contested jurisdiction." (Doc. No. 36, PageID# 1859.) Chauhan responds that EuroChem's proposed uses of the discovery in the BVI are either "inappropriate" (passing along the discovered evidence to liquidators) or currently unavailable (presenting the evidence in pre-judgment evidentiary hearings that are stayed pending resolution of liquidation proceedings).

---

[4]    "A party is generally not permitted to raise new arguments in its reply brief." *Doe v. Univ. of Cincinnati*, 173 F. Supp. 3d 586, 598 (S.D. Ohio 2016). However, the Court granted EuroChem leave to file a sur-reply, which cured any prejudice to EuroChem that might have otherwise attended Chauhan's shift in argument. *See Burlington Ins. Co. v. PMI Am., Inc.*, 862 F. Supp. 2d 719, 726 (S.D. Ohio 2012) (finding that good cause supported the filing of a sur-reply where party had made new arguments in its reply brief).

[5]    Rogalskiy appears to have filed an application challenging the BVI Court's jurisdiction over him as early as March 3, 2017. (Doc. No. 28-3, PageID# 1748–49.)

[6]    The parties also blame each other for creating the false impression that Rogalskiy had conceded jurisdiction. (Doc. No. 30, PageID# 1778; Doc. No. 36, PageID# 1858–59; Doc. No. 43, PageID# 2141 n.3.) Who is at fault is immaterial to resolution of Chauhan's motion. The Court declines to construe Chauhan's 60(b)(1) motion as alleging excusable neglect (as EuroChem suggests) rather than mistake of fact. (Doc. No. 36, PageID# 1858–59.) Chauhan has explicitly raised a mistake of fact based claim, and the Court analyzes it as such. (Doc. No. 26, PageID# 1537–38.)

9

(Doc. No. 43, PageID# 2141–43.) For the reasons offered in the analysis of Chauhan's Rule 60(b)(2) argument below, the Court is not persuaded that circumstances have changed in either the BVI or Cyprus proceeding in a way that would prevent § 1782 evidence from being used in those forums. The inaccurate statement regarding Rogalskiy therefore is not "substantive" enough to support relief from the Court's order under Rule 60(b)(1). *Reyes*, 307 F.3d at 455; *see also LeafGuard of Kentuckiana, Inc. v. LeafGuard of Ky., LLC*, Civil Action No. 5: 15-237-DCR, 2016 WL 3079792, at *4 (E.D. Ky. May 31, 2016) (rejecting motion for relief under 60(b)(1) where movant had shown that the court's opinion "contain[ed] a long list of factual inaccuracies" but not "that any of those alleged errors were substantive").

### 2. Newly Discovered Evidence

Rule 60(b)(2) authorizes courts to reconsider an order on the basis of "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)." Fed. R. Civ. P. 60(b)(2). "To prevail on a Rule 60(b)(2) motion, 'a movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) [that] the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment." *JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 584–85 (6th Cir. 2014) (alteration in original) (quoting *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012)).

Chauhan argues that "changed circumstances in Cyprus militate in favor of reconsideration" under Rule 60(b)(2). (Doc. No. 26, PageID# 1539.) He also argues that changed circumstances in BVI—i.e., current and impending stays of the underlying substantive proceeding—warrant reconsideration of the Court's order. (Doc. No. 43, PageID# 2141–43.) In response, EuroChem argues that "changed circumstances" cannot be the basis for a Rule 60(b)(2)

motion, "which must pertain to evidence [that] existed at the time of trial."[7] (Doc. No. 36, PageID# 1859 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Alticor, Inc.*, Nos. 05-2479, 06-2538, 2007 WL 2733336, at *8 (6th Cir. Sept. 19, 2007)).) Chauhan does not respond to this argument in his reply.

Even if the evolution of the proceedings in BVI and Cyprus did constitute newly discovered evidence under Rule 60(b)(2), the presentation of that evidence prior to the Court's order would not have produced a different result. *See JPMorgan Chase Bank, N.A.*, 750 F.3d at 584–85. Despite Chauhan's arguments to the contrary, the Court is not convinced that § 1782 discovery is no longer usable in the BVI and Cyprus proceedings. As stated in the order, "[a] court's inquiry into the intended use of the requested discovery is minimal" and "the discovery need not be for immediate use; rather it may be contemplated for use at some point in the proceeding." (Doc. No. 24, PageID# 1512 (citing *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015)).) Chauhan has failed to show that EuroChem's proposed uses of § 1782 evidence in the BVI and Cyprus proceedings are invalid.[8]

---

[7]    This rule stems from *Davis ex rel. Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 135 (6th Cir. 1990). However, more recent Sixth Circuit decisions laying out the Rule 60(b)(2) standard have declined to mention the existence-at-the-time-of-trial requirement and have instead focused on whether the movant exercised due diligence in obtaining the relevant evidence. *See JPMorgan Chase Bank, N.A.*, 750 F.3d at 584–85; *Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1110 (6th Cir. 2012); *HDC, LLC*, 675 F.3d at 615. It is neither clear that the *Davis* rule is still in effect nor that Rule 60(b)(2) should have the same application in the context of discovery orders under § 1782. *Compare Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1274 (11th Cir. 2014) (finding that the filing in Ecuador of a lawsuit relating to the § 1782 order constituted "newly discovered evidence" under 60(b)(2)), *with In re Hornbeam Corp.*, No. 14-MC-424 (Part 1), 2017 WL 5515857, at *3 (S.D.N.Y. Feb. 17, 2017) (restating the rule that newly discovered evidence must be "of facts that existed at the time of trial or other dispositive proceeding" and finding that records of wire transfers constituted such evidence).

[8]    EuroChem also argues that the requested discovery would be used in a proceeding in Russia (in the "unlikely" event that the BVI defendants are successful in their jurisdictional challenges) (Doc. No. 36, PageID# 1852) and in the recently filed action in the BVI against Alexander Shishkin (Shishkin), the sole owner of Dreymoor, and his company Belor Eurofert

11

### a.  The BVI Proceeding

EuroChem argues that it will be able to use § 1782 discovery in the BVI proceeding:[9]

- at evidentiary hearings to assess damages that will be held prior to the entry of judgments against Pomytkin, Livingston, and Darlow Panama; and,

- at the liquidation proceedings that are underway against Livingston, Banter Industries Limited (Banter), Rumbay Assets Corporation (Rumbay), and Darlow Investments LP Scotland (Darlow Scotland).

(Doc. No. 36, PageID# 1852–55.)

Chauhan does not adequately respond to any of EuroChem's proposed uses. Chauhan argues that Pomytkin "should not be considered [] a defendant against whom a proceeding [is] ongoing for purposes of Section 1782" because he has yet to be served. (Doc. No. 43, PageID# 2143 n.6.) EuroChem counters that Pomytkin was served in Russia and that the BVI court held that he is a proper party to the action, issuing an order "permitting future service on him via Rumbay Assets Corp." (Doc. No. 36, PageID# 1853.) A March 13, 2018 decision of the BVI Court, which Chauhan filed with this Court, confirms that status. (Doc. No. 54-1)

---

GmbH. (Doc. No. 49, PageID# 2241). Chauhan responds that "[t]his Court did not grant discovery for use in Russian courts" (Doc. No. 43, PageID# 2141) and that "[a] court analyzing the sufficiency of an application under Section 1782 does so *at the time the application is filed*" and therefore the proceeding against Shishkin cannot be used to justify the Court's discovery order. (Doc. No. 52, PageID# 2255 (emphasis in original).) Because the Court finds that Chauhan has not shown that the requested discovery cannot be used in the original BVI or Cyprus proceeding, the Court need not decide whether it is proper for EuroChem to argue that the originally ordered discovery is usable in the contemplated proceeding in Russia or the Shishkin proceeding.

[9]     In its response in opposition to Chauhan's motion to reconsider, EuroChem argued that it would be able to use § 1782 discovery at the evidentiary hearing on Rogalskiy's motion challenging the BVI court's jurisdiction. (Doc. No. 36, PageID# 1852.) That hearing occurred on December 19, 2017 and therefore cannot be a vehicle for § 1782 discovery. (*See* Doc. No. 50, PageID# 2247, ¶ 3; Doc. No. 54-1, PageID# 2280, ¶ 17.) The resolution of Rogalskiy's jurisdictional challenge has been tied to that of the other BVI defendants, "which remains pending in the Court of Appeal." (Doc. No. 54, PageID# 2274, ¶¶ 7, 8.)

The BVI Court notes that "[t]he ninth defendant [Pomytkin] has not taken any steps or otherwise engaged in the proceedings to date" and that an order authorized service on Pomytkin through "the registered office of Rumbay Assets Group." (*Id.* at PageID# 2280, ¶ 18.) "The validity of the claim form and statement of claim," which are to be served on Rumbay Assets Group, was extended to June 27, 2018. (*Id.* at PageID# 2281, ¶ 19.) In its notice of further developments, EuroChem states that the BVI litigation continues "apace" and § 1782 discovery will be usable against Pomytkin, suggesting that he has now been served. (Doc. No. 49, PageID# 2240–41.) Chauhan does not address EuroChem's renewed suggestion that § 1782 discovery is usable against Pomytkin. (*See* Doc. No. 52, PageID# 2254.) EuroChem's claim that the requested discovery "will be central to linking the bribe payors, especially Dreymoor, with Mr. Pomytkin and Mr. Rogalskiy and their decade-long bribery scheme" and then "seeking judgment[]" against Pomytkin is sufficient to support the Court's discovery order. (Doc. No. 37, PageID# 1912, ¶ 21; Doc. No. 48, PageID# 2223.)

Nor does Chauhan adequately respond to EuroChem's claim that it will use the requested discovery against Livingston and Darlow Panama in pre-judgment evidentiary hearings on the assessment of damages.[10] (Doc. No. 36, PageID# 1853–54; Doc. No. 37, PageID# 1911.)

---

[10]  EuroChem has notified the Court that it lost the opportunity to present § 1782 evidence "[i]n the BVI Action, in an evidentiary hearing against defendant Darlow Enterprises Inc." (Doc. No. 49, PageID# 2240.) As Chauhan points out, EuroChem does not specify the nature of that proceeding or the way the evidence would have been used. (Doc. No. 52, PageID# 2253.) It is not clear to the Court that the "evidentiary hearing" that EuroChem missed out on was the pre-judgment hearing on the assessment of damages that EuroChem references in its opposition to Chauhan's motion to reconsider. (Doc. No. 49, PageID# 2240.) The pre-judgment hearing is therefore still a viable vehicle for § 1782 discovery. However, even if the Court is mistaken, its conclusion is unaffected—as explained below, the pre-judgment hearings against Pomytkin and Livingston, the liquidation proceedings against Livingston, Banter, Rumbay, and Darlow Scotland, and the Cyprus action, each provides an independent justification for the Court's original discovery order.

13

EuroChem states that a default has entered against Darlow Panama, "but to obtain a judgment, a full evidentiary hearing on assessment of damages is required." (Doc. No. 36, PageID# 1854.) According to EuroChem, a "petition for winding up will follow and it is likely that liquidation proceedings" will then commence. (*Id.*) EuroChem argues that the requested discovery will be used in both the pre-judgment hearing to assess damages and in the subsequent liquidation proceeding. [11] (*Id.*) With respect to Livingston, EuroChem states that "[n]either a default nor a judgment has been entered against [it] and that, "[i]nstead, the Court appointed a Liquidator for this defendant." (*Id.* at PageID# 1853.) EuroChem plans to use the requested discovery to rebut any defense that the liquidator raises with respect to EuroChem's claims against Livingston or in a full hearing on damages that will take place if the liquidator chooses not to defend those claims. (*Id.* at PageID# 1854; Doc. No. 37, PageID# 1913, ¶ 24.)

Chauhan does not directly respond to these proposed uses of the requested discovery; rather, he argues that, "once liquidation proceedings begin, substantive proceedings against the

---

[11]     In his response to EuroChem's motion to ascertain status, Chauhan does point out that "Eurochem has never suggested that Mr. Chauhan has knowledge of Darlow [Panama] and yet "it asks this Court to assume without explanation that Mr. Chauhan's evidence could have been used in a hearing that occurred following a default judgment taken against a defendant that Mr. Chauhan did not work for." (Doc. No. 52, PageID# 2255.) That critique is consistent with the declaration of Brian Childs, in which he states that "Eurochem has never alleged any dealings between Dreymoor and any corporate entity other than Gianthill." (Doc. No. 41, PageID# 2028, ¶ 4(b).) The implication of that argument is that it is not clear how the requested discovery would help EuroChem assess damages against any company other than Gianthill.

EuroChem reponds that, while it has not definitively asserted "that bribe payments were made by Dreymoor to Darlow [Panama]," that "misses the point." (Doc. No. 48, PageID# 2224.) According to EuroChem, Chauhan "knows whether Dreymoor also paid bribes to Darlow [Panama] (or the other bribe recipients including Livingston and the other BVI entities." (*Id.*) The Court finds that the possibility that the § 1782 discovery will reveal evidence of bribes paid by Dreymoor to entities other than Gianthill is enough to support the conclusion that the requested discovery is for use with respect to those entities. The Court also notes that such a conclusion is consistent with one of the goals of EuroChem's application, which "is to discover how much Dreymoor paid to or for the benefit of Mr. Rogalskiy and what other companies or individuals were paid by Dreymoor at the request or on behalf of Mr. Rogalskiy." (Doc. No. 2, PageID# 25.)

[relevant] debtor[s,] (in this case, Darlow [Panama] and Livingston,) are automatically stayed." (Doc. No. 43, PageID# 2143; Doc. No. 41, PageID# 2029, ¶ 4(d).) Even if that is true, which EuroChem disputes, the liquidation of Darlow Panama has yet to commence, and EuroChem claims that § 1782 discovery will be used to quantify "the damages to be assessed" against it. (Doc. No. 48, PageID# 2254.) Further, Chauhan ignores EuroChem's suggestion that a pre-judgment hearing on damages can take place within the liquidation that is already underway against Livingston. (Doc. No. 36, PageID# 1854; Doc. No. 37, PageID# 1913, ¶ 24.) Chauhan's argument that § 1782 discovery must be "currently useful" (Doc. No. 43, PageID# 2140) is unavailing—as the Second Circuit held in *Mees v. Buiter*, the word "proceeding" used in 28 U.S.C. § 1782 "means the entire proceeding, not merely its initial stage." 793 F.3d at 299.

Finally, Chauhan does not sufficiently support his argument that EuroChem will not be able to use § 1782 discovery in the wind-up and liquidation proceedings that are already underway. Chauhan claims that those proceedings are "wholly separate" from the underlying BVI action and that furnishing evidence to a liquidator to adjudicate claims against third-parties or purported creditors does not constitute "use" of the evidence in EuroChem's own proceedings—"[i]f the liquidators seeks Chauhan's evidence, the ***liquidators*** should apply for Section 1782 discovery." (Doc. No. 43, PageID# 2140, 2142 (emphasis in original).) The Court agrees with Chauhan that, if EuroChem only sought to convey § 1782 discovery to liquidators for uses that were independent of its own claims, it would not be enough to constitute "use" under the statute. 28 U.S.C. § 1782(a); *see also Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 122 (2d Cir. 2015) (explaining that, to the extent that petitioner's requested discovery "might be helpful to the trustees in the liquidation proceedings," "there is nothing preventing the trustees . . . from seeking discovery in U.S. courts pursuant to § 1782"). But Chauhan's response does not address the other

15

ways that EuroChem plans to use the § 1782 evidence, which include supporting any responses to defenses that the liquidator raises on behalf of Livingston (Doc. No. 36, PageID# 1854) and "challeng[ing] any claims asserted by any third parties within the liquidations of the wound up corporate defendants." (Doc. No. 48, PageID# 2225.) Further, Chauhan offers nothing to rebut EuroChem's claim that the wind-up and liquidation proceedings are part of the underlying BVI case and therefore within the scope of the order. (Doc. No. 36, PageID# 1852, 1854.)

Instead, Chauhan again relies on *Certain Funds*, a case that the Court has found distinguishable in important ways from the facts of this petition. (Doc. No. 24, PageID# 1513.) In *Certain Funds*, the Second Circuit confronted whether the petitioners, a collection of funds and accounts, were entitled to discovery under § 1782 despite having "made no showing that they [were] able to present evidence to any of the tribunals conducting those proceedings . . .," which included liquidation proceedings in the Cayman Islands and Bahrain. *Certain Funds*, 798 F.3d at 115, 118. Respondents argued that the petitioners were not entitled to discovery because they were not an "interested person" within the meaning of § 1782, a question that the court opted not to answer given its finding that the petitioners could not use the requested discovery. 28 U.S.C. § 1782(a) (allowing discovery upon "a letter rogatory issued, or request made, by a foreign or intentional tribunal or upon the application of any interested person . . ."); *Certain Funds*, 798 F.3d at 118, 120. Chauhan's reliance on *Certain Funds* to suggest that EuroChem is not an "interested person" is thus misplaced. (Doc. No. 43, PageID# 2141). It is also inapt because, unlike the petitioners in *Certain Funds*, EuroChem is a party to the proceedings in the BVI and has revealed the "mechanism by which [it] could use any information obtained through a § 1782 order in the liquidation" and wind-up proceedings. *Certain Funds*, 798 F.3d at 121.

16

### b. The Cyprus Proceeding

Chauhan and EuroChem agree that a hearing was held in Cyprus on EuroChem's motion for an asset-freeze and discovery order.[12] (Doc. No. 26, PageID# 1539; Doc. No. 36, PageID# 1846.) The parties disagree, however, about the relationship between that hearing and the larger proceeding of which it is a part. EuroChem labels that hearing "interim" and states that "[t]he main substantive hearing will be held in 2018 or later." (Doc. No. 36, PageID# 1846.) At that hearing, "[a]ny additional evidence obtained from Mr. Chauhan or otherwise will be usable . . . ." (*Id.*) Chauhan responds that there will not be a main substantive hearing. (Doc. No. 43, PageID# 2146.) Each side cites the declarations or reports of lawyers licensed to practice in Cyprus to bolster their arguments.

To support his position, Chauhan cites the declaration of Doctor Pavlos Kourtellos (Kourtellos), who argues that, because the proceeding was "filed solely in aid of the BVI proceedings," the normal rule that a final substantive hearing follows the interim hearing does not apply. (Doc. No. 40, PageID# 2025, ¶ 6.) Kourtellos does not cite any authority to substantiate that claim. In contrast, the expert report of Petros Artemis (Artemis), which EuroChem relies on to respond to Chauhan's argument, contains citations to Cypriot case law. (Doc. No. 48-1, PageID# 2231–32.) Artemis, who was the president of the Supreme Court of Cyprus from 2008 to 2013, states that the asset-freeze and discovery proceeding "will be treated as a standard civil proceeding with the December Interim Decision being followed by a full evidentiary hearing in the main case

---

[12]    It appears that, on December 22, 2017, the District Court of Nicosia denied EuroChem's application for an asset-freeze and discovery order in an "Interim Decision." (Doc. No. 45-1, PageID# 2157.)

. . . ." (*Id.* at PageID# 2232, ¶ 11.) Chauhan has not shown that there will not be a substantive hearing in the asset-freeze proceeding.[13]

Chauhan also argues that, even if there were such a hearing, use of the requested discovery therein would exceed the scope of the Court's order because "the Court's entire synopsis of the Second Cyprus Case concerned only [the] interim proceedings." (Doc. No. 43, PageID# 2145.) EuroChem responds that Chauhan "seeks to improperly narrow the Order from its actual terms" (Doc. No. 48, PageID# 2219) and argues that the asset-freeze proceeding and a separate contempt proceeding involving Rogalskiy are independently sufficient to justify the Court's order. (Doc. No. 36, PageID# 1845–46.)

The Court's order encompassed the asset-freeze proceeding of which the interim hearing was a part. The order referred to the case number of the underlying proceeding and described EuroChem's goal in "the Cyprus action;" there is no mention of an interim hearing.[14] (Doc. No. 24, PageID# 1506, 1514.) However, the order did not extend to the contempt proceeding. EuroChem's briefing focused on the asset-freeze proceeding (Doc. No. 16, PageID# 1376), and, as Chauhan points out (Doc. No. 43, PageID# 2145), the Court's order makes no mention of the

---

[13]      In his response to EuroChem's notice of further developments, Chauhan claims that "the Cyprus court is considering whether to formally dismiss Eurochem's request for discovery . . . because, among other things, Eurochem 'misled the court' in its effort to obtain *ex parte* orders, which the court described as 'inexcusable and reprehensible behavior.'" (Doc. No. 52, PageID# 2253 (quoting Doc. No. 45-1, PageID# 2183)).) In Kourtellos's supporting declaration, he states that "[s]ince the Cyprus court rejected EuroChem's application, EuroChem has applied for a default judgment against all defendants" and that the "timeframe for the two applications to be heard and for the Court's decision to be issued is estimated to be 4 – 6 months." (Doc. No. 53, PageID# 2271, ¶ 5.)

[14]      Chauhan argues that "[a]t the June 23, 2017 hearing, EuroChem no longer claimed that it intended to use Chauhan's evidence in the full substantive proceedings in Cyprus." (Doc. No. 43, PageID# 2145.) The Court finds no support in the transcript of the hearing for the proposition that EuroChem sought § 1782 discovery for use only in the interim Cypriot asset-freeze and discovery proceeding.

18

contempt proceeding. (Doc. No. 24, PageID# 1506–07.) Regardless, Chauhan has not shown that the § 1782 discovery the Court ordered is no longer usable in Cyprus and has therefore failed to show that relief is warranted under Rule 60(b)(2).

### 3. Any Other Reason That Justifies Relief

After listing five specific circumstances in which courts may grant relief from an order, Federal Rule of Civil Procedure 60(b) allows courts to grant the same "for any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Despite the liberality of that language, the Sixth Circuit has held that Rule 60(b)(6) is only available "in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Ford Motor Co. v. Mustangs Unlimited, Inc.*, 487 F.3d 465, 468 (6th Cir. 2007) (quoting *Blue Diamond Coal Co.*, 249 F.3d at 524). Thus, courts apply Rule 60(b)(6) "only as a means to achieve substantial justice" in "unusual and extreme situations where principles of equity *mandate* relief." *Id.* (emphasis in original) (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990)).

Chauhan argues that the "court may also reconsider the Order with respect to the Cyprus Action under Rule 60(b)(6) because Eurochem's position has changed." (Doc. No. 26, PageID# 1540.) Chauhan states that EuroChem originally based its § 1782 application, in part, on the contempt proceeding against Rogalskiy, but "abandoned that part of its Application after Chauhan had submitted [his] opposition, thus giving Chauhan no opportunity to mount an additional substantive defense against granting the Application." (*Id.*) That "substantive defense" is the argument that an asset-freeze request does not qualify as an "adjudicative" proceeding that would justify discovery under § 1782. (*Id.*) EuroChem responds that Chauhan is seeking to raise a new legal theory, which is not the proper basis for a motion for reconsideration (Doc. No. 36, PageID# 1848–49 (citing *CGH Transport, Inc. v. Quebecor World, Inc.*, 261 F. App'x 817, 824 (6th Cir.

2008))) and that nothing Chauhan has argued "warrants relief under [Rule 60(b)(6)]." (Doc. No. 36, PageID# 1860.)

Chauhan offers the Court "no case law or other authority providing a basis for it to conclude" that EuroChem's change of position qualifies as an "exceptional or extraordinary circumstance" that would justify relief under Rule 60(b)(6). *In re Braga*, 272 F.R.D. 621, 627 (S.D. Fla. 2011). The Court therefore concludes that Chauhan "has not satisfied [his] burden to demonstrate that any basis for relief under Rule 60(b)(6) exists." *Id.* That is especially so given that Chauhan had an opportunity to raise the issue of whether EuroChem's asset-freeze request was sufficiently adjudicatory in his original briefing. Chauhan states that, prior to the June 23, 2017 hearing, he "was under the impression that the substantive claim against Mr. Rogalskiy would make up some part of Eurochem's Application." (Doc. No. 26, PageID# 1540.) Chauhan's brief opposing EuroChem's petition for discovery bears that out—he mentions both EuroChem's efforts to "freeze Mr. Rogalskiy's assets" and obtain "an order of contempt against him." (Doc. No. 15, PageID# 1151.) Yet it does not follow that Chauhan's assumption that both proceedings were part of EuroChem's application excuses his failure to challenge the asset-freeze proceeding on the grounds that it was not "adjudicative." (Doc. No. 26, PageID# 1540.) Chauhan's reasoning appears to be that if one proceeding is concededly adjudicative (the contempt proceeding against Rogalskiy) and therefore before a qualifying "tribunal" under § 1782, there was no reason to argue that any other proceedings are not adjudicative. 28 U.S.C. § 1782(a); (Doc. No. 26, PageID# 1540.) Chauhan failed to make an argument about a proceeding that he knew formed a basis of EuroChem's application; he was not prejudiced when EuroChem changed its position to address only that proceeding.

Even assuming that Chauhan did not have an opportunity to argue that the asset-freeze proceeding in Cyprus is not adjudicative such that it would be proper for him to raise it now, the Court would not find that argument to have merit. There is some dispute as to what qualifies as "a proceeding" in a "foreign or international tribunal" under § 1782. 28 U.S.C. § 1782(a). In interpreting that language, the Second Circuit has held that a proceeding must be "adjudicative in nature" to benefit from § 1782 discovery. *Euromepa S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998). The court in *Euromepa* applied that rule to hold that a French bankruptcy proceeding was not "adjudicative" where the bankruptcy court's consideration of the merits of the dispute between the parties was barred by res judicata and the only task left was to enforce an "already extant judgment." *Id.* at 28. When confronted with the question of whether a post-judgment petition was a qualifying proceeding under § 1782, the Eleventh Circuit held that it was. *In re Clerici*, 481 F.3d 1324, 1333 (11th Cir. 2007). The court observed that "nothing in the plain language of § 1782 requires that the proceeding be adjudicative in nature" and, instead, found that the statute "specifically provides that the evidence obtained through § 1782 can be used in 'criminal investigations conducted *before* formal accusation,' even though such investigations are not adjudicative proceedings." *Id.* (emphasis in original) (quoting 28 U.S.C. § 1782(a)). The Court need not weigh in on this debate because EuroChem's asset-freeze proceeding in Cyprus satisfies the more-stringent reading of the statute.

Chauhan's argument to the contrary relies on *Jiangsu Steamship Company, Limited v. Success Superior Limited*, a case that broadly interpreted *Euromepa*'s holding that the French bankruptcy proceeding was not adjudicative. No. 14 Civ. 9997(CM), 2015 WL 3439220, at *4 (S.D.N.Y. Feb. 5, 2015). In *Jiangsu*, the petitioner sought discovery regarding the assets of two companies in order "to obtain advance security for [a judgment against them]" and to "enforce

whatever judgment it might obtain" in an arbitration in London that it had not then commenced. *Id*. The court applied *Euromepa* to conclude that "neither pre-judgment attachment nor post-judgment enforcement proceedings are 'adjudicative' in nature." *Id.* Chauhan argues that, "[l]ike any other pre-judgment attachment, an asset-freeze request simply seeks to secure a source of funds to satisfy a judgment" and therefore the asset-freeze proceeding in Cyprus is not before a qualifying tribunal under § 1782 and, therefore, not adjudicative. (Doc. No. 26, PageID# 1540.)

Yet the Second Circuit in *Euromepa* did not hold that all post-judgment proceedings are not adjudicative and instead focused on the lack of a merits determination in the French bankruptcy proceeding because of the res judicata issue in finding that there was nothing to adjudicate there. *Euromepa*, 154 F.3d at 28. The *Euromepa* court did not mention pre-judgment proceedings. *See id.*; *see also In re Stati*, No. 15-MC-91059-LTS, 2018 WL 474999, at *4 (D. Mass. Jan. 18, 2018) (distinguishing *Euromepa* from the case before the court by noting that "in the case at bar there are no prior rulings on the contested issues of ownership and/or sabotage that would constitute issue preclusion or leave nothing left to adjudicate in the Stockholm court, the Netherlands proceeding, and/or Belgian proceeding"). *Jiangsu* overextended *Euromepa* in holding that all pre-judgment attachment proceedings are non-adjudicative. *See In re BNP Paribas Jersey Trust Corporation Ltd.*, 18-MC-00047 (PAC), 2018 WL 895675, *2 (S.D.N.Y. Feb. 14, 2018) (finding that § 1782 discovery was for use in a proceeding before a foreign tribunal where "the information may show whether additional measures should be taken to restrain [the assets of a foreign company] or whether [that company] should be held in contempt of [a] Freezing and Disclosure Order" that was entered by the Royal Court of Jersey); *In re Sergeant*, 278 F. Supp. 3d 814, 821 (S.D.N.Y. 2017) (finding that a Panamanian attachment proceeding, which petitioner sought to aid with the use of § 1782 discovery, "undoubtedly qualifie[d] as a foreign proceeding" within the

meaning of § 1782). It is not surprising that the court in *Jiangsu* did not seriously consider the possibility that a pre-judgment proceeding might be adjudicative—Jiangsu had not suggested "how a pre-judgment security proceeding could possibly so qualify" nor had it established that the proceedings it sought to aid with § 1782 discovery "*could* be brought in any foreign jurisdiction . . . ." *Jiangsu*, 2015 WL 3439220, at *4, 6; *see also In re Stati*, 2018 WL 474999, at *4 (explaining that the court in *Jiangsu* held that "the enforcement or attachment proceeding was not reasonably contemplated" and therefore the *Jiangsu* court had no occasion to analyze the extent to which an actual proceeding was adjudicatory).

EuroChem argues that, to succeed in the asset-freeze proceeding in Cyprus, "[it] must prove [its] underlying case; namely that bribes were paid by Dreymoor and others to Mr. Rogalskiy and companies he controls, with the result that those funds are held in constructive trust . . . ." (Doc. No. 36, PageID# 1849–50.) Chauhan does not dispute that description of the nature of the asset-freeze proceeding in his reply. Without finding that the requirement of an adjudicative proceeding exists, the Court is satisfied that the asset-freeze proceeding in Cyprus is adjudicative within the meaning of *Euromepa*.

### B. Chauhan's Motion for a Stay of Discovery

Chauhan's arguments in support of a stay of discovery largely mirror those he makes in support of his motion for reconsideration. Chauhan argues that (1) there is no longer a proceeding in Cyprus in which § 1782 discovery can be used, (2) the Cyprus proceeding is not "adjudicative," and (3) there is no use for § 1782 discovery in the BVI proceeding until the appeal is resolved because all of the non-appealing defendants have defaulted. (Doc. No. 26, PageID# 1534–35.) Those arguments fail for the reasons offered above. It is true that the "good cause" standard is less demanding than the clear and convincing evidence standard that must be overcome in the context

of a motion for reconsideration. *Compare* Fed. R. Civ. P. 26(c)(1)(A), *with Info-Hold, Inc.*, 538 F.3d at 454. Yet the change in standard does not affect the Court's conclusion.

Further, the burden on Chauhan of proceeding with discovery is minimal, while further delay will prejudice EuroChem. Chauhan's concerns about sitting for a deposition during the "busy holiday season" for which he had "longstanding travel plans" are no longer relevant. (Doc. No. 26, PageID# 1536.) And the Court's discovery order was tailored to avoid unduly burdening Chauhan, limiting document production to the relevant time period and only to documents in "Chauhan's possession, custody, or control in the Middle District of Tennessee." (Doc. No. 24, PageID# 1523–24.) Meanwhile, EuroChem has identified opportunities to use the § 1782 discovery that are time-sensitive (Doc. No. 36, PageID# 1857)—the interim asset-freeze proceeding in Cyprus is over (Doc. Nos. 44, 45) as is the hearing on Rogalskiy's jurisdictional challenge (Doc. No. 54-1, PageID# 2280, ¶ 17) and the evidentiary hearing against Darlow Panama (Doc. No. 49, PageID# 2240).[15] Additional delay will likely bring more missed opportunities.

The Court will therefore lift the stay of discovery it imposed pending consideration of Chauhan's motion for reconsideration. If Chauhan seeks further review of this order, he may renew his application for a stay during that proceeding.

## IV. Conclusion

For the foregoing reasons, Chauhan's motion for reconsideration, or alternatively, for a stay of discovery (Doc. No. 25) is DENIED.

---

[15] Chauhan argues that EuroChem "feigns" that it was prejudiced by its inability to use § 1782 discovery in the BVI hearings. (Doc. No. 52, PageID# 2253.) The parties also debate whether the Court should, in analyzing prejudice to EuroChem, consider EuroChem's inability to use the requested discovery in a "new legal action" before the High Court of Justice in London. (Doc. No. 49, PageID# 2240; Doc. No. 52, PageID# 2253, n.1.) Regardless of whether the inability to present § 1782 evidence in either the BVI or London proceeding prejudiced EuroChem, the Court finds that the inability to present that evidence in the interim proceeding in Cyprus did.

24

It is so ORDERED.

ALISTAIR E. NEWBERN
United States Magistrate Judge