**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **JSC MCC EUROCHEM and**<br>**EUROCHEM TRADING GMBH,** | ) | |
| | ) | |
| | ) | |
| **Petitioners,** | ) | |
| | ) | **Case No. 3:17-mc-00005** |
| **v.** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **SANDEEP CHAUHAN,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM**

Before the court are: (1) respondent Sandeep Chauhan's Motion for Review (Doc. No. 29) of the magistrate judge's November 3, 2017 Order ("November 3 Order") (Doc. No. 24) granting the Application of JSC MCC EuroChem and EuroChem Trading GmbH for an Order under 28 U.S.C. § 1782 to Take Discovery from Sandeep Chauhan ("§ 1782 Application") (Doc. No. 1); and (2) Chauhan's Motion for Review of Magistrate Judge's Orders (Doc. No. 59), in which the respondent raises new objections to the November 3 Order and further objects to the magistrate judge's July 3, 2018 Order ("July 3 Order") denying Chauhan's motion to reconsider the November 3 Order. It is unclear to the court to what extent Chauhan intended for the more recent Motion for Review to supersede the first, so the court will consider them both.

As set forth herein, the court has conducted the review requested by the respondent's motions. In that limited regard, the motions will be granted. However, the objections set forth therein are without merit and will be overruled, and the court will affirm the magistrate judge's November 3 and July 3 Orders granting the § 1782 Application.

# I.      STANDARD OF REVIEW

The standard of review applicable to a party's objections to a magistrate judge's ruling depends on whether the objections pertain to a dispositive or nondispositive matter. The majority of persuasive authority on this topic concludes that a magistrate judge's ruling on a motion for discovery under 28 U.S.C. § 1782(a) is nondispositive. *See, e.g.*, *In re Application of Pola Mar. Ltd.*, No. 16-333, 2018 WL 1787181, at * (S.D. Ga. Apr. 13, 2018) (considering a magistrate judge's denial of respondent's motion to quash subpoenas issued under § 1782 to be nondispositive); *In re Sergeeva*, No. 1:13-CV-3437-LMM-RGV, 2015 WL 12866970, at *2 (N.D. Ga. Feb. 6, 2015) (same); *Siemens AG v. W. Dig. Corp.*, No. 2:13-CV-01407-CAS(AJWx), 2014 WL 1569605, at *2 (C.D. Cal. Apr. 17, 2014) (finding a magistrate judge's ruling on a § 1782 application for judicial assistance to be nondispositive); *Republic of Ecuador v. Bjorkman*, No. 11-cv-01470-WYD-MEH, 2011 WL 5439681, at *1 (D. Colo. Nov. 9, 2011) (same); *In re Application of Republic of Ecuador*, 7, 1182 (10 Cir. 2013) (noting that, in a § 1782 proceeding, "there is nothing to be done 'on the merits,'" because "[t]he only issue before the district court is discovery; the underlying litigation rests before a foreign tribunal.").

While a *de novo* standard of review applies to objections to a magistrate judge's ruling on a dispositive matter, this court's review of a magistrate judge's resolution of a nondispositive discovery matter is limited to determining whether the order is "clearly erroneous" or "contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). *See also Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) ("When a magistrate judge determines a non-excepted, pending pretrial matter, the district court has the authority to 'reconsider' the determination, but under a limited standard of review.").

"'A finding [of fact] is "clearly erroneous" when although there is evidence to support it,

the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Adams Cty. Reg'l Water Dist. v. Vill. of Manchester*, 226 F.3d 513, 517 (6th Cir. 2000) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A legal conclusion is contrary to law if it contradicts or ignores applicable precepts of law, as found in the Constitution, statutes, or case precedent. *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992).

## II.     LEGAL FRAMEWORK

The application at issue here was submitted under 28 U.S.C. § 1782(a), which states in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

In other words, the statute authorizes a district court to grant an application for judicial assistance in obtaining discovery under § 1782 if four statutory requirements are met:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*financialright GmbH v. Robert Bosch LLC*, 294 F. Supp. 3d 721, 728 (E.D. Mich. 2018) (quoting *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007)).

If those requirements are met, the statute authorizes—but does not require—the district

court to provide assistance. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255, 264 (2004) (citing *United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001)); *see also* 28 U.S.C. § 1782(a) ("The district court . . . *may* order . . . ."). Rather, "[w]hether, and to what extent, to honor a request for assistance pursuant to § 1782 has been committed by Congress to the sound discretion of the district court." *United Kingdom*, 238 F.3d at 1318–19. In exercising this discretion, the court must take "into consideration the 'twin aims' of the statute, namely, 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Certain Funds, Accounts and/or Investment Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 117 (2d Cir. 2015) (quoting *Metallgesellschaft AG v. Hodapp (In re Metallgesellschaft AG)*, 121 F.3d 77, 79 (2d Cir. 1997)).

The Supreme Court has provided some guidance for the exercise of that discretion, identifying a number of factors that may "bear consideration in ruling on a § 1782(a) request." *Intel Corp.*, 542 U.S. at 264. These include: (1) whether the target of discovery is a participant in the foreign proceedings; (2) the "nature of the foreign tribunal, the character of the proceedings underway abroad and the receptivity of the foreign government" or tribunal to judicial assistance from United States federal courts; (3) whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or of the United States; and, (4) whether the requests are unduly intrusive, and, if so, whether they ought to be "rejected or trimmed." *Id.* at 264–65. In *Intel Corp.*, the Court repeatedly emphasized that these factors are non-exhaustive and "may" be taken into account as applicable. *Id.*

## III.    PROCEDURAL AND FACTUAL BACKGROUND

The court expresses no opinion regarding the merits of the underlying disputes and

briefly summarizes the facts only insofar as they may be relevant to a discussion of the respondent's objections.

### A. The § 1782 Application

JSC MCC EuroChem and its wholly owned subsidiary, EuroChem Trading GmbH, (referred to herein, collectively, as "EuroChem") together are Russia's largest mineral fertilizer trader and one of the leading fertilizer production companies in the world, with approximately $7 billion in annual sales and worldwide operations. (Doc. No. 3, Popov Decl. ¶ 4.) EuroChem alleges that over $45 million in bribes were paid by its trading partners to two former EuroChem senior executives, Valery Rogalskiy and Dmitry Pomytkin. (*Id.* ¶ 5.) It alleges that many of these bribes were paid "through a web of offshore shell companies owned or controlled by [Rogalskiy and Pomytkin] located primarily in the British Virgin Islands." (*Id.* ¶ 7.) In return, the companies paying off Rogalskiy and Pomytkin were guaranteed "large volumes of high margin products . . . and better terms than they would otherwise have been able to obtain." (*Id.* ¶ 10.) EuroChem alleges that a "massive investigation" into the alleged bribery scheme has ensued, in connection with which it has brought actions in various jurisdictions, including Singapore, Cyprus, the British Virgin Islands, California, and elsewhere (*Id.* ¶ 7.)

According to EuroChem, most of its trading partners have confessed to making improper payments to Rogalskiy and Pomytkin and have provided ample documentary evidence of the payments made from 2004 through 2014, when Rogalskiy's employment was terminated. (*Id.* ¶ 8.) Dreymoor Fertilisers Overseas (Pte.) Limited ("Dreymoor"), a company based in Singapore, is one of the few EuroChem trading partners that has, to date, refused to acknowledge any wrongdoing or involvement in Rogalskiy's and Pomytkin's scheme, "despite . . . overwhelming documentary evidence thereof." (*Id.* ¶ 8.)

According to EuroChem, respondent Sandeep Chauhan is CEO and a director of Dreymoor and an employee of Dreymoor America LLC ("Dreymoor America"), a Delaware company with its principal place of business in Franklin, Tennessee and an affiliate of Dreymoor. (Doc. No. 2, at 9.) For at least some period of time, Chauhan reported directly to Dreymoor's sole shareholder, Alexander Shishkin, a Russian citizen who has admitted that he personally negotiated and arranged for payments by Dreymoor to Rogalskiy. EuroChem also maintains that Chauhan himself personally negotiated hundreds of contracts between Dreymoor and its affiliates, including Dreymoor America, and dealt directly with Rogalskiy and Pomytkin during the relevant time frame. (Doc. No. 3, Popov Decl. ¶¶ 10–12.) Based on Chauhan's position and contacts, EuroChem presumes that he "has knowledge of the millions of dollars of improper payments made to Mr. Rogalskiy and Mr. Pomytkin and the benefits received by Dreymoor and its foreign affiliates on account thereof." (Doc. No. 2, at 14.) For his part, Chauhan asserts that he served as a director of Dreymoor until August 11, 2016 and is now merely an employee of Dreymoor America. (Doc. No. 15-2, Chauhan Decl. ¶¶ 4–5.) He denies knowledge of, or involvement in, any bribery scheme. There is no dispute that Chauhan is a resident of Franklin, Tennessee.

EuroChem asserts that discovery from Chauhan is highly relevant and will be used in foreign judicial proceedings against Rogalskiy and Pomytkin in the British Virgin Islands, *JSC MCC EuroChem v. Livingston Properties Equities, Inc.*, No. BVIHCV (COM) 2015/0097 (the "BVI Action"), in Cyprus, *EuroChem JSC MCC v. Nimati International*, No. 5996/2015 (the "Cyprus Action"), in an ongoing arbitration in London before the London Court of International Arbitration, *EuroChem Trading GmbH v. Dreymoor Fertilisers Overseas Pte Limited*, LCIA Arbitration No. 173598 (the "LCIA Arbitration"), and in contemplated future foreign litigation.

(Doc. No. 2, at 6.)

EuroChem initiated the proceeding in this court by filing its § 1782 Application on May 18, 2017. (Doc. No. 1.) It requests authorization to take Chauhan's deposition and to require him to produce "all documents from January 1, 2004, to the present that are responsive to the requests" identified in the subpoena attached to EuroChem's application, and in Chauhan's possession, custody or control, as follows:

> 1. All documents and communications, including emails, invoices, bank statements and wire transfer records, concerning or evidencing any payments made, directly or indirectly, in cash or in assets of any kind, including any payments for services, loans, gifts[,] reimbursement of expenses, or other payments of any kind by Dreymoor, Dreymoor America, Belor or Lantran or any of their affiliates or shareholders (including but not limited to Alexander Shishkin) (collectively, the "Dreymoor Entities") to, or for the benefit or on behalf of, Valery Rogalskiy and/or Dmitry Pomytkin or any entity controlled by them, including but not limited [to] payments to Nimati Trading Ltd., Gianthill Management Ltd., Tamera Yakovleva, TSV Real Estate GmbH, to any spouse or relative thereof.
>
> 2. All contracts and agreements, including drafts, between any of the Dreymoor Entities and Valery Rogalskiy or Dmitry Pomytkin or any person or entity acting for the benefit or on behalf of such persons.
>
> 3. All documents and communications evidencing the profits made or other benefits obtained by any of the Dreymoor Entities from all contracts between such entities and EuroChem, ECTG or any affiliate thereof.
>
> 4. Documents sufficient to identify the names and addresses of all officers and directors of Dreymoor, Dreymoor America, Belor and Lantran.

(Doc. No. 3-1, at 12–13.) The undersigned referred the matter to the magistrate judge for disposition. (Doc. No. 10.)

### B. The November 3 Order

EuroChem's § 1782 application was exhaustively briefed, and both parties submitted numerous witness declarations in support of their positions. The magistrate judge held a hearing on June 23, 2017, at which counsel for both parties appeared and argued on behalf of their

respective clients. Following the hearing, the magistrate judge entered the November 3 Order granting the motion, with certain limitations on the scope of the documents Chauhan would be required to produce.

More specifically, addressing the statutory requirements, the magistrate judge noted that there was no dispute that Chauhan resides and can be found in the geographic area encompassed by the Middle District of Tennessee and that EuroChem seeks discovery and is an interested party in foreign proceedings. The dispute concerned—and still concerns—whether the two parts of the third statutory factor are satisfied: whether the evidence sought is (1) "for use" in (2) a qualifying proceeding in a foreign tribunal. Addressing that factor, the magistrate judge specifically found that the BVI and Cyprus Actions are qualifying proceedings in foreign tribunals and that the discovery sought here is "for use" in those proceedings.

The magistrate judge also found that the majority of the discretionary factors identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247–48 (2004), weighed, at least partially, in EuroChem's favor. Specifically, she found as a factual matter that (1) Chauhan is not a party to the BVI or Cyprus Action; (2) Chauhan offered no proof that the courts of BVI or Cyprus would reject § 1782 discovery; and (3) there was no evidence that EuroChem's § 1782 discovery request was made to circumvent Cypriot or BVI procedural rules. (Doc. No. 24, at 13–19.) Regarding the fourth factor, however, the magistrate judge agreed with Chauhan that EuroChem's document request is unduly burdensome and overly broad, insofar as "the scope of [the] request—easily encompassing thousands of documents—is typical of discovery sought from a corporate litigant, not from an individual," and includes documents located outside this country. (*Id.* at 20.) Based on the record before her, the magistrate judge found that this factor weighed against allowing the § 1782 discovery "as requested by

EuroChem." (*Id.* at 21.)

She further concluded, however, that this finding was not fatal to the § 1782 Application but that, instead, "some trimming of EuroChem's proposed discovery will cure its overbreadth." (*Id.*) In light of the record before her and EuroChem's concessions, the magistrate judge limited the scope of allowable discovery to documents dating from January 1, 2010 to January 1, 2015 and to those documents within Chauhan's "possession, custody, or control in the Middle District of Tennessee." (*Id.* at 21–22.) She granted EuroChem's Application and ordered Chauhan to appear for deposition and to provide the requested documents, subject to the above-referenced limitations, by December 4, 2017. (*Id.* at 22.)

## C.      Chauhan's Objections to the November 3 Order

On November 17, 2017, Chauhan filed both a (1) Motion to Stay this Court's November 3, 2017 Order of Discovery and to Reconsider in Light of Changed Circumstances ("Motion to Reconsider") (Doc. No. 25), asking the magistrate judge to reconsider her order, and (2) a Motion for Review of this Court's November 3, 2017 Order of Discovery ("first Motion for Review") (Doc. No. 29) under Rule 72(a) and Local Rule 72.02, addressed to the district judge. The undersigned requested that the magistrate judge rule on the Motion to Reconsider before this court addressed the first Motion for Review, noting that "the magistrate judge's reconsideration may moot the Motion for Review." (Doc. No. 32.) The magistrate judge thereafter directed EuroChem to respond to the Motion to Reconsider and also stayed the November 3 Order pending her ruling on that motion. (Doc. No. 33.)

In his first Motion for Review and supporting Memorandum (Doc. Nos. 29, 30), to which EuroChem was never directed to respond, Chauhan specifically objects to the magistrate judge's determination that BVI and Cyprus Actions are qualifying proceedings in foreign tribunals, for

purposes of § 1782, and that the discovery sought here was "for use" in those proceedings. He did not, however, object to the magistrate judge's consideration and application of the *Intel* discretionary factors to this case or to the trimmed scope of the discovery.

### *(1) The BVI Action*

There is no dispute that the BVI Action is a substantive dispute against Rogalskiy, Pomytkin, and various companies that EuroChem alleges were involved in the bribery scheme, including Dreymoor. Dreymoor and other defendants unsuccessfully moved the BVI court to dismiss the matter for lack of jurisdiction, and an appeal of that ruling remains pending. Chauhan does not argue that the BVI Action *per se* is not a qualifying proceeding before a foreign tribunal. Instead, he maintains that the procedural posture of the case—the fact that the jurisdictional question is on appeal and the matter is stayed pending resolution of that question—means that any discovery procured here cannot be "for use" in that proceeding.

The magistrate judge rejected that argument, specifically finding that the procedural posture of the case did not defeat EuroChem's application for discovery. One of two grounds for that determination was that, while some of the foreign defendants in the BVI Action, including Dreymoor, had challenged jurisdiction, others had conceded jurisdiction. (Doc. No. 24, at 11 (citing Doc. No. 2, PageID#25).) The magistrate judge found that, regardless of the outcome of the appeal, EuroChem would be able to use the discovery against those defendants, specifically referencing Rogalskiy and Gianthill, whom the magistrate judge found did not contest jurisdiction.

Chauhan objects to those conclusions, specifically on the basis that the magistrate judge erred as a factual matter in determining that the discovery could be "used" against any other defendants, regardless of the outcome of the jurisdiction appeal. Chauhan states that, of

seventeen defendants in the BVI Action, twelve had objected to jurisdiction, specifically including Dreymoor, Gianthill, and Rogalskiy, who filed a separate jurisdictional challenge on March 3, 2017 (Doc. No. 30, at 11 (citing Child Decl. ¶¶ 7(a), 8(a))); four had defaulted and had judgments rendered against them; and one, Pomytkin, had never been served and therefore had no claims or proceedings pending against him in the BVI court. Chauhan argues that the magistrate judge erred as a factual matter in concluding that neither Gianthill nor Rogalskiy had challenged jurisdiction and in finding that evidence procured from Chauhan could be used against the defaulting defendants, since the proceedings against them were not ongoing. Chauhan also argues that the magistrate judge erred in concluding that § 1782(a)'s "for use" requirement can be met when the proceeding in the foreign court is on appeal and therefore not in a procedural posture that would permit the introduction of new evidence. (Doc. No. 30, at 11.)

### (2) The Cyprus Action

In the Cyprus Action, EuroChem seeks a world-wide asset-freeze injunction against Rogalskiy and companies he controlled, including Gianthill. EuroChem maintained that it believed Chauhan's testimony regarding his position as a director of Dreymoor could produce evidence of transactions between Gianthill and Dreymoor that would support a freeze of Rogalskiy's assets. EuroChem explained that it had already obtained an asset-freeze injunction against Gianthill in the BVI Action but that the European Union would automatically recognize an injunction issued by a Cypriot court but not by a BVI court. The magistrate judge found that the Cyprus Action was a qualifying proceeding before a foreign tribunal and that the discovery sought in the action here was for use in that action.

Chauhan objects to this finding on the grounds that (1) an action seeking an asset-freeze injunction is not a substantive, "adjudicative proceeding" for which § 1782 discovery can be

granted—an issue he had not raised in initially responding to the § 1782 Application; and (2) even if it were, EuroChem's application in the Cyprus Action was heard on October 23, 2017, judgment has been reserved, and no more evidence will be taken in that action, thus rendering moot EuroChem's desire to procure additional evidence "for use" in that proceeding.

### D.        The Motion to Reconsider and the July 3 Order Denying It

Chauhan's Motion to Reconsider relied on grounds virtually identical to those asserted in his Motion for Review, though couched in terms of the standard of review applicable to motions under Rule 60(b). He argued that reconsideration was warranted because (1) the magistrate judge had relied on the mistaken belief that "other defendants" would remain in the BVI Action regardless of the outcome of the appeal; (2) that Rogalskiy and Gianthill had not challenged jurisdiction; (3) that changed circumstances in Cyprus rendered the finding that the discovery sought from Chauhan could be used in that action; and (4) that EuroChem's position had changed, since it no longer claimed that the Cyprus Action was a substantive contempt proceeding against Rogalskiy and that Chauhan did not have a fair opportunity to address its new position—that the pursuit of an asset-freeze injunction was a qualifying proceeding—because EuroChem did not raise that argument until the hearing on June 23, 2017, well after Chauhan had filed his response in opposition to the application for discovery. (Doc. No. 26.) He argued that reconsideration was necessary to determine whether an asset-freeze request is a qualifying proceeding under § 1782(a). Again, he did not challenge the magistrate judge's analysis of the *Intel* discretionary factors.

In her July 3 Order denying the Motion to Reconsider, the magistrate judge addressed all of the issues raised by Chauhan under the standards pertaining to motions under Rule 60(b)(1), (2) and (6). Regarding the BVI Action, she found that, even if it is true that the only defendants

in the BVI Action who have not challenged jurisdiction have had default judgments entered against them, Chauhan had not shown that those judgments were entered *before* the magistrate judge entered her November 3 Order. In addition, EuroChem argued, and presented evidence in support of its argument, that Chauhan was "plainly wrong" in stating that all defendants in the BVI Action had either appealed or had default judgments entered against them and suggesting that the BVI Action will terminate if the appeal is successful. EuroChem offered a more nuanced and complicated view of the procedural posture of the case than did Chauhan. (*See generally* Doc. No. 36 and exhibits thereto.) The magistrate judge concluded that the evidence failed to support Chauhan's claim that the evidence sought from him cannot be "used" in the BVI Action if the jurisdictional challenges are successful on appeal.

In addition, the magistrate judge concluded that, although EuroChem and Chauhan now agreed that, at the time the November 3 Order issued, Rogalskiy had appealed the BVI court's jurisdiction and, therefore, that the magistrate judge's factual finding that Rogalskiy had conceded jurisdiction was incorrect, this error was not substantial because the § 1782 evidence will be usable against other defendants even if Rogalskiy's appeal is successful.

The magistrate judge also rejected Chauhan's arguments regarding whether the evidence in question could actually be used in the BVI or Cyprus Action. Regarding the BVI Action, the magistrate judge concluded that Chauhan did not adequately respond to EuroChem's claims regarding how it intended to use the discovery. Regarding the Cyprus Action, the parties agreed that a hearing had been conducted in Cyprus on EuroChem's motion for an asset-freeze and discovery order, but they disagreed about the relationship between that hearing and the larger proceeding of which it is a part. EuroChem characterized the hearing as "interim" and represented that a "main substantive" hearing would be conducted later, at which evidence

procured from Chauhan will be usable. (Doc. No. 36, at 7.) Chauhan maintained that there will be no further hearings. Each side presented the declarations or reports of lawyers licensed to practice in Cyprus in support of their arguments. The magistrate judge found the evidence presented by EuroChem to be more persuasive, largely because it contained citations to Cypriot case law, and concluded that Chauhan had not shown that there will *not* be a substantive evidentiary hearing in the Cyprus Action. He also failed to show that the discovery sought by EuroChem would no longer be usable.

The magistrate judge also rejected Chauhan's argument that Rule 60(b)(6) provided a basis for the court to reconsider its previous ruling because of EuroChem's purported change in position regarding in which of two Cyprus Actions it planned to "use" the § 1782 discovery. The magistrate judge found, first, that Chauhan offered no legal authority providing a basis to conclude that EuroChem's change in position qualifies as an "exceptional or extraordinary circumstance" that would justify relief under Rule 60(b)(6). Further, however, the magistrate judge found that Chauhan was on notice that the § 1782 Application relied, in part, on the contempt proceedings against Rogalskiy and, in part, on the asset-freeze request and that he had the opportunity to raise the issue of whether EuroChem's asset-freeze request was sufficiently "adjudicatory" in his original briefing. She concluded:

> Chauhan's reasoning appears to be that if one proceeding is concededly adjudicative (the contempt proceeding against Rogalskiy) and therefore before a qualifying "tribunal" under § 1782, there was no reason to argue that any other proceedings are not adjudicative. Chauhan failed to make an argument about a proceeding that he knew formed a basis of EuroChem's application; he was not prejudiced when EuroChem changed its position to address only that proceeding.

(Doc. No. 56, at 20 (internal citations omitted).)

Finally, the magistrate judge rejected Chauhan's argument on the merits, assuming without deciding that a qualifying proceeding must be "adjudicative" in nature to qualify under §

1782, *see Euromepa S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 27 (2d Cir. 1998) (holding that a proceeding must be "adjudicative in nature" to benefit from § 1782 discovery), and finding that the asset-freeze proceeding in Cyprus was adjudicative within the meaning of *Euromepa*.

 **E. The Second Motion for Review**

 In his most recent Motion for Review, Chauhan purports to raise objections to both the November 3 and July 3 Orders. He argues that the magistrate judge erred in finding that the § 1782 requirements are met and specifically contends that (1) EuroChem has not met its burden of showing that it can "use" the § 1782 discovery sought in the BVI Action against defendants in that case who are appealing the jurisdiction of the BVI court, are not named in EuroChem's subpoenas, or have not been served with the BVI complaint; and (2) EuroChem has not established that the asset-freeze proceeding in Cyprus is an "adjudicative" proceeding in which the § 1782 discovery can be used. In addition, Chauhan now objects, for the first time, to the magistrate judge's determination in the November 3 Order that the *Intel* discretionary factors weigh in favor of permitting the discovery sought by EuroChem, subject to the limitations set forth in that Order. Specifically, he contends that the actual target of EuroChem's discovery is Dreymoor, not Chauhan, and that EuroChem's counsel has purportedly admitted that he seeks discovery here in order to "circumvent the narrower discovery procedures of the BVI." (Doc. No. 60, at 5.)

 In response, EuroChem disputes Chauhan's arguments for all of the same reasons it has opposed them throughout this litigation. It also contests Chauhan's raising of certain new arguments for the first time and points out that this action has been pending now for more than a year while the background facts have continued to evolve. For instance, among other things, it states that the anticipated litigation against Alexander Shishkin, the sole shareholder of

Dreymoor, which the magistrate judge found did not qualify as a proceeding in a foreign tribunal in the November 3 Order, has now been filed in the BVI, naming as defendants Shishkin and several related entities, *JSC MCC EuroChem and EuroChem Trading GmbH v. Lantran (Overseas) Limited, Vabinda Limited, Chimalli Limited, Alexander Shishkin and Belo-Eurofert GmbH*, Case No. BVI HCF (COM) 2018/37 (the "Shishkin Action"), and that the discovery sought here would also be for use in that case.

## IV.  ANALYSIS

### A.  Issues Before the Court

Considering the first and second Motions for Review together, the court understands Chauhan to be raising the following objections to the magistrate judge's orders:

(1) the court no longer has subject matter jurisdiction over the matter as it relates to the Cyprus Action because that issue is now moot, as the Cypriot court held an evidentiary hearing and the matter is "reserved for judgment" (Doc. No. 29, at 1);

(2) the magistrate judge erred in concluding that the discovery sought could be "used" in the BVI Action against BVI defendants that (a) have appealed on jurisdictional grounds and whose appeal is still pending (including Dreymoor, Rogalskiy, Gianthill, and Nimati); (b) are not named in the subpoena (the remaining BVI defendants); or (c) have not been served with the BVI complaint (Pomytkin) (Doc. No. 30, at 11; Doc. No. 60, at 6);

(3) the magistrate judge erred as a matter of law in finding that the Cyprus Action is a qualifying foreign proceeding, because an asset-freeze action is not an "adjudicative action" as required for purposes of § 1782 (Doc. No. 30, at 14; Doc. No. 60, at 9–10); and

(4) the magistrate judge improperly applied the *Intel* discretionary factors when she determined that Chauhan rather than Dreymoor is the actual target of the discovery and where EuroChem's counsel admitted that the § 1728 Application "is nothing more than his attempt to circumvent the narrower discovery procedures of the BVI" (Doc. No. 60, at 5).

### B.  The Statutory Factors

#### (1)  Subject-Matter Jurisdiction

Although the magistrate judge did not have occasion to consider this question before

issuing the November 3 Order, Chauhan raised it in his Motion to Reconsider. In ruling on the issue, the magistrate judge carefully considered all of the evidence introduced by the parties and concluded that Chauhan had failed to show that there will not be a substantive hearing in the asset-freeze proceeding. Chauhan did not challenge that conclusion in his Motion to Reconsider, and EuroChem now represents that a final hearing in the asset-freeze proceeding has been scheduled for October 10, 2018. (Doc. No. 65, at 15.) Regardless, Chauhan has not shown that the magistrate judge's factual finding was clearly erroneous.

### (2)    The "For Use" Requirement as Applied to the BVI Action

Chauhan argues, in summary, that the magistrate judge erred in finding the "for use" requirement met with respect to the BVI Action because (1) the case against the relevant defendants is on appeal and therefore no evidence can be submitted to the court in the procedural posture in which it now stands; (2) EuroChem has not proven that Chauhan's evidence has any relevance to the "other defendants" against whom the case is not stayed; and (3) Pomytkin is not a party to the BVI action because he has not been served. (Doc. No. 60, at 7–8.)

In the November 3 Order, the magistrate judge first rejected Chauhan's argument that the discovery could not be used in the BVI Action because of the procedural posture of the case— the fact that it was on appeal or undergoing liquidation proceedings. Chauhan had relied on *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113 (2d Cir. 2015). The magistrate judge correctly concluded that that case did not necessarily support Chauhan's position. There, while the Second Circuit noted that the petitioner had not shown that it could use the requested discovery "in the liquidation proceedings or on appeal," *id.* at 122, the actual holding was that, even assuming that the petitioners qualified as "interested persons" within the meaning of § 1782, they had failed to identify any "way in which they can 'use' the evidence

they seek in any of the ongoing foreign proceedings," because they had no participation rights in the foreign proceedings at all. *Id.* at 120; *see id.* ("Without some means of injecting the evidence into the proceeding, a § 1782 applicant cannot show that it has a role in the proceeding, such that it may 'use' the information, or, as we have recently said, employ it 'with some advantage.'" (quoting *Mees v. Buiter*, 793 F.3d 291, 297 (2d Cir. 2015)).

Chauhan now argues that the magistrate judge's reliance on *Mees* is misplaced, as that case did not go so far as to hold that evidence may be used in a case on appeal. Based primarily upon the Second Circuit's decision in *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24 (2d Cir. 1998), Chauhan argues that the magistrate judge erred in not looking to the applicable foreign law for consideration of whether EuroChem had any ability to present evidence to the courts of the BVI while the matter there is on appeal. *See id.* at 29 ("[T]he discovery certainly could not be 'for use in' the French Supreme Court appeal if that court does not take and hear new evidence."). This argument is entirely beside the point, however, as the magistrate judge did not presume that the evidence requested would be used in the BVI appeal, and EuroChem never argued that it intended to use the evidence in the pending appeal. Rather, EuroChem presumes that (1) the jurisdictional challenges that are the subject of the appeal will be rejected; and (2) even if they are not, the case against Dreymoor and Rogalskiy will simply, and promptly, resume in a different venue. (*See* Doc. No. 36, at 8–9 ("[I]t should be noted that the primary defendants in the BVI Case, Dreymoor and Rogalskiy, have challenged every court's jurisdiction in every case in every location (Singapore, California, London and Cyprus) and lost every time. Thus, Respondent's premise here – that they may finally win one such motion in the BVI making Mr. Chauhan's evidence unusable – is highly dubious." (footnote omitted)); *id.* at 8 n.1 (noting that "[t]he Dreymoor Defendants took the extraordinary step of writing to the BVI Court of Appeal

following the oral argument offering to waive any statute of limitation defense in the event the case was transferred to Russia. Thus, there is no doubt the case will proceed in [either] the BVI or Russia." (internal citation omitted)).) EuroChem also argues that the litigation, likely in Russia, would only be needed if Dreymoor's and Rogalskiy's challenge to jurisdiction is successful and that this contemplated litigation falls "squarely within the definition of a 'reasonably contemplated future proceeding' as to which § 1782 equally applies." (*Id.*) Chauhan has failed to refute this argument or show that the magistrate judge erred as a matter of law in concluding that the "for use" requirement was met as to Dreymoor and Rogalskiy, despite the pending appeal.

Moreover, regarding the "use" of the discovery against the defendants against whom the litigation is not stayed, the magistrate judge found, in the November 3 Order, that the case would proceed in the BVI against those defendants who had not challenged jurisdiction. The magistrate judge specifically referenced Rogalskiy and Gianthill, a BVI-based company. (Doc. No. 24, at 12.) In his first Motion for Review and his Motion to Reconsider, Chauhan asserted that the magistrate judge's ruling was based on factual mistakes or clearly erroneous factual findings, because both Gianthill and Rogalskiy had challenged the BVI court's jurisdiction, and Gianthill did not appear to be a BVI-based company. It also argued that the litigation was no longer pending against those defendants in the BVI Action against whom a default judgment had already entered. In response, EuroChem argued that, apart from the Dreymoor defendants[1] who

---

[1] According to EuroChem, Dreymoor and ten other defendants (the "Dreymoor Defendants") had appealed the denial of their motion to dismiss, but six of the appealing Dreymoor Defendants are incorporated in BVI and concede that jurisdiction exists; they ask only that the BVI Action be stayed on a *forum non conveniens* basis, pending the filing of a new case in Russia. (Doc. No. 36, at 7–8.) Thus, EuroChem asserts, even if the Dreymoor Defendants' appeal succeeds, the case will continue—and the discovery sought will be "for use"—either in the BVI or in Russia.

challenged jurisdiction, the BVI Action was proceeding against Pomytkin and five other defendants who had not challenged jurisdiction, including Livingston Properties Equities Inc. ("Livingston"), a BVI corporation controlled by Rogalskiy; Darlow Enterprises (Panama) ("Darlow Panama"), Banter Industries Limited ("Banter"), Rumbay Assets Corp. ("Rumbay"), and Darlow Investments LP (Scotland) ("Darlow Scotland"). Of these, according EuroChem, the BVI court has appointed a liquidator for Livingston, and a full hearing will be required to quantify the damages against Livingston, at which Chauhan's evidence will be usable. (Doc. No. 36, at 20 (citing Addo Decl. ¶ 19(iii)).) Default has been entered against Darlow Panama, but no judgment, and a full evidentiary hearing for an assessment of damages, likely followed by liquidation proceedings, will be required. According to EuroChem, discovery from Chauhan would be used at an evidentiary hearing and subsequent liquidation proceedings. Banter, Rumbay, and Darlow Scotland have defaulted, and judgments have already been entered against them. A liquidator has been appointed to wind up these companies under the BVI Court's supervision. EuroChem asserts that the winding-up process proceeds as part of the BVI Action, and EuroChem and the liquidator "have agreed that evidence provided by [EuroChem] will be used by the Liquidator to adjudicate claims against third-parties or purported creditors of these entities" and that the proceedings are "adjudicative." (Doc. No. 36, at 20 (citing Addo Decl. ¶ 19(v)).)

In the July 3 Order, the magistrate judge found that Chauhan had not adequately responded to "any of EuroChem's proposed uses." (Doc. No. 56, at 12.) For the most part, Chauhan does not seek review of the magistrate judge's findings in her July 3 Order, except that he now argues, essentially for the first time, that EuroChem has not shown that any evidence EuroChem might obtain from him is "relevant to" the proceedings against the non-appealing

defendants. The magistrate judge observed that Chauhan had obliquely raised that argument in his response to EuroChem's Motion to Ascertain Status:

> In his response to EuroChem's motion to ascertain status, Chauhan does point out that "Eurochem has never suggested that Mr. Chauhan has knowledge of Darlow [Panama] and yet "it asks this Court to assume without explanation that Mr. Chauhan's evidence could have been used in a hearing that occurred following a default judgment taken against a defendant that Mr. Chauhan did not work for." (Doc. No. 52, PageID# 2255.) That critique is consistent with the declaration of Brian Childs, in which he states that "Eurochem has never alleged any dealings between Dreymoor and any corporate entity other than Gianthill." (Doc. No. 41, PageID# 2028, ¶ 4(b).) The implication of that argument is that it is not clear how the requested discovery would help EuroChem assess damages against any company other than Gianthill.
>
> EuroChem responds that, while it has not definitively asserted "that bribe payments were made by Dreymoor to Darlow [Panama]," that "misses the point." (Doc. No. 48, PageID# 2224.) According to EuroChem, Chauhan "knows whether Dreymoor also paid bribes to Darlow [Panama] (or the other bribe recipients including Livingston and the other BVI entities." (Id.) The Court finds that the possibility that the § 1782 discovery will reveal evidence of bribes paid by Dreymoor to entities other than Gianthill is enough to support the conclusion that the requested discovery is for use with respect to those entities. The Court also notes that such a conclusion is consistent with one of the goals of EuroChem's application, which "is to discover how much Dreymoor paid to or for the benefit of Mr. Rogalskiy and what other companies or individuals were paid by Dreymoor at the request or on behalf of Mr. Rogalskiy." (Doc. No. 2, PageID# 25.)

(Doc. No. 56, at 14 n. 11.)

To the extent Chauhan is raising new arguments now that the magistrate judge was never called upon to address, the court rejects them as waived. To the extent the magistrate judge did address them in the footnote quoted above, Chauhan has failed to show that her factual findings were clearly erroneous or that her legal conclusions were contrary to law.

Because his other arguments regarding the "for use" requirement with respect to the BVI Action are without merit, the court need not address Chauhan's argument that the evidence cannot be used against Pomytkin because he has not yet been served. Regardless, the court again

finds no basis for disturbing the magistrate judge's finding on that issue. She noted that Chauhan

> does not address EuroChem's renewed suggestion that § 1782 discovery is usable against Pomytkin. EuroChem's claim that the requested discovery "will be central to linking the bribe payors, especially Dreymoor, with Mr. Pomytkin and Mr. Rogalskiy and their decade-long bribery scheme" and then "seeking judgment[]" against Pomytkin is sufficient to support the Court's discovery order. (Doc. No. 37, PageID# 1912, ¶ 21; Doc. No. 48, PageID# 2223.)

(Doc. No. 56, at 13.) Chauhan argues now only that EuroChem has done nothing more than "suggest" that Pomytkin has been served and that the magistrate judge's conclusion that the § 1782 evidence may be used in proceedings against him was incorrect as a matter of fact and law. (Doc. No. 60, at 6.) Chauhan's contention of error is utterly without merit. The magistrate judge found that the evidence before her conclusively established service upon Pomytkin. (*See* Doc. No. 56, at 12 ("EuroChem counters that Pomytkin was served in Russia and that the BVI court held that he is a proper party to the action, issuing an order 'permitting future service on him via Rumbay Assets Corp.' (Doc. No. 36, PageID# 1853.) A March 13, 2018 decision of the BVI Court, which Chauhan filed with this Court, confirms that status. (Doc. No. 54-1.)").) Chauhan has made no attempt to show that that conclusion was erroneous.

### *(3)     Whether the Cyprus Action Is a Qualifying Foreign Proceeding*

In his Response to EuroChem's § 1782 Application, Chauhan argued only that EuroChem had failed to show how any evidence in his possession would be relevant to the asset-freeze or contempt proceedings against Rogalskiy in the Cyprus Action. EuroChem insisted that bribe payments by Dreymoor, of which it believes Chauhan has knowledge, would be useable against Rogalskiy in Cyprus. The magistrate judge agreed that EuroChem had shown that evidence from Chauhan could be used in the Cyprus Action. In his first Motion for Review and Motion to Reconsider, Chauhan argued, first, that the magistrate judge's finding that the § 1782 discovery would be "for use" in the Cyprus Action was clearly erroneous based on changed

circumstances, as the Cypriot court had conducted a final hearing at which it had heard all the evidence it was going to hear. Second, he argued for the first time that the magistrate judge erred in concluding that the asset-freeze proceeding is "adjudicative" which, Chauhan claims, is required under § 1782. Chauhan argued that he should be able to raise this issue for the first time, because EuroChem's position had changed from a focus on the contempt action against Rogalskiy in Cyprus to a focus on the asset-freeze action against him.

The magistrate judge found that the hearing in the asset-freeze proceeding was preliminary, a finding Chauhan apparently no longer contests, as indicated above. The magistrate judge also found both that Chauhan had the opportunity to raise this issue of whether the Cyprus asset-freeze proceeding was adjudicative in nature in response to EuroChem's § 1782 Application and that, in any event, the argument was without merit. First, the magistrate judge noted that, while the Second Circuit has held that a proceeding must be "adjudicative in nature" to benefit from § 1782 discovery, *see Euromepa*, 154 F.3d at 27, at least one other circuit has held that "nothing in the plain language of § 1782 requires that the proceeding be adjudicative in nature." *In re Clerici*, 481 F.3d 1324, 1333 (11th Cir. 2007). Without resolving that split, the magistrate judge concluded that the asset-freeze proceeding "satisfies the more stringent reading of the statute." (Doc. No. 56, at 21.)

In reaching that conclusion, that magistrate judge surveyed the existing law on the topic of whether pre- or post-judgment proceedings qualify for § 1782 assistance. She also considered EuroChem's argument that, to prove that it was entitled to relief in the asset-freeze proceeding, it would essentially be required to prove its underlying claims, "namely that bribes were paid by Dreymoor and others to Mr. Rogalskiy and companies he controls," and that Chauhan did not dispute that characterization of the case. She concluded:"[w]ithout finding that the requirement

of an adjudicative proceeding exists, the Court is satisfied that the asset-freeze proceeding in Cyprus is adjudicative within the meaning of *Euromepa*." (Doc. No. 56, at 23.)

Now, Chauhan argues that the relevant inquiry is not what EuroChem has to prove to be entitled to relief but the nature of the relief requested. The magistrate judge considered and rejected the only case upon which Chauhan relies, *Jiangsu Steamship Co., Ltd. v. Success Superior Ltd.*, Civ. No. 14-cv-9997(CM), 2015 WL 3439220, at *4 (S.D.N.Y. Feb. 5, 2015). She observed that *Euromepa* had not held "that all post-judgment proceedings are not adjudicative" and that *Jiangsu* overextended *Euromepa* in holding that all pre-judgment attachment proceedings are non-adjudicative. (Doc. No. 56, at 22.)

This court finds that Chauhan cites to no case law in support of his insistence that the magistrate judge should have focused on the nature of the relief requested—something he himself never focused on previously. Further, he offers effectively no basis for a finding that the magistrate judge's legal conclusion was contrary to law in the sense that it "contradicts or ignores applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992). This assertion of error is without merit.

## C.    The *Intel* Discretionary Factors

Although Chauhan failed to raise any objections to the magistrate judge's application of the *Intel* discretionary factors in his first Motion for Review, thereby likely waiving his right to review of that issue,[2] in the interests of equity and the unusual procedural posture of this case,

---

[2] Under Local Rule 72.02, Chauhan had fourteen days from entry of the November 3 Order to file a motion for review of that ruling, "stat[ing] with particularity that portion of the order for which review is sought." L.R. 72.02(b)(1). He filed his timely Motion for Review (Doc. No. 29), as discussed above, but none of his objections concern the magistrate judge's ruling on the application of the Intel discretionary factors.

the court will nonetheless consider these objections. On the merits, the court finds that Chauhan has not shown that the magistrate judge's findings of fact were clearly erroneous or that her legal conclusions were contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

Chauhan first argues that Dreymoor is the actual target of EuroChem's discovery and that any discovery from Chauhan would essentially be duplicative. The magistrate judge, referencing *Mees v. Buiter*, 793 F.3d 291 (2d Cir. 2015), and *In re Microsoft Corp.*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006), rejected this argument.

In *Microsoft Corp.*, the district court concluded that the relevant inquiry, with respect to the first *Intel* factor, "is whether the evidence is [otherwise] available to the foreign tribunal." 428 F. Supp. at 194. Because it was available in the foreign tribunal in that case, the court held that "§ 1782 aid [was] both unnecessary and improper." *Id.* The magistrate judge found the facts of that case distinguishable from those here, because, first, it was "not evident that the documents EuroChem seeks will be obtained through Dreymoor in the BVI court," in part because Dreymoor's jurisdictional challenge created some uncertainty as to whether it would remain a party. (Doc. No. 24, at 14.) More importantly, Chauhan's deposition testimony was unlikely to be obtainable in the BVI Action. (*Id.*)

Insofar as Chauhan appears also to be arguing that EuroChem should not be able to take discovery from him as long as there is *any* litigation in any forum by EuroChem against Dreymoor in which EuroChem could obtain the same information, the magistrate judge rejected that contention too, relying on the Second Circuit's affirmation in *Mees* that § 1782 does not "impose a necessity standard or an exhaustion requirement." 793 F.3d at 303. The magistrate judge's conclusions are well supported and are not contrary to controlling legal precedent.

Now, in his belated objection, Chauhan cites *Schlich v. The Broad Institute, Inc. (In re*

*Application of Schlich*), 893 F.3d 40 (1st Cir. June 20, 2018), as upholding the lower court's decision that the applicant should not be allowed to take discovery "from non-party employees of [the respondent] in part because [the respondent] was a party to foreign litigation and "'the information sought from them [non-parties] relates to their employment with Broad.'" (Doc. No. 60, at 11.) He neglects to point out that the district court's decision was based largely on a conclusion that the non-parties were current employees—and under the control—of the respondent that was a party to the foreign action. *In re Schlich*, No. 16-91278-FDS, 2016 WL 7209565, at *4 (D. Mass. Dec. 9, 2016). Chauhan, however, is apparently not a current employee of a named party in any foreign action, nor does he appear to be subject to the jurisdiction of the BVI court. Neither the district court opinion nor the First Circuit's provides a basis for setting aside the magistrate judge's ruling in this case.

Chauhan also contends that EuroChem's discovery request is improper under *Intel* because it seeks to evade the discovery rules that apply in the foreign courts. Addressing this question, the magistrate judge distinguished the cases cited by Chauhan and held that a "§ 1782 applicant does not circumvent a foreign tribunal's rules simply because the sought discovery would not be available in the foreign jurisdiction." (Doc. No. 24, at 17 (citing *Mees*, 793 F.3d at 303).) And she distinguished the other cases cited by Chauhan, *In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029 (N.D. Cal. 2016), and *In re Microsoft Corp.*, 428 F. Supp. 2d at 194, on the basis that, in both, unlike here, the foreign tribunals at issue had expressly opposed the discovery sought in the § 1782 proceeding.

Now, Chauhan cites another new case, *Kiobel by Samkalden v. Cravath, Swaine & Moore*, 895 F.3d 238 (2d Cir. July 10, 2018), in support of his argument that the district court erred in allowing EuroChem to take discovery from Chauhan, despite EuroChem's counsel's

"admission" that he was employing the § 1782 process precisely because Chauhan was not subject to the jurisdiction of the BVI court and, therefore, could not be compelled by that court to provide testimony or discovery. Chauhan generally maintains that the evidence before the magistrate judge clearly established that EuroChem "is simply running to 1782 to obtain evidence from Dreymoor Overseas in circumvention of foreign court rules." (Doc. No. 60, at 13.)

*Kiobel*, however, actually held that the district court abused its discretion in granting a § 1782 petition, because the documents sought were in the respondent's possession only because "they were sent to the United States for the purpose of American litigation," such that allowing discovery of the documents would "jeopardize the 'policy of promoting open communications between lawyers and their clients.'" *Kiobel*, 895 F.3d at 241 (quoting *Application of Sarrio, S.A.*, 119 F.3d 143 (2d Cir. 1997)). That case has no bearing here. Moreover, the *Kiobel* court did not overrule long-standing Second Circuit precedent "reject[ing] any requirement that evidence sought in the United States pursuant to § 1782(a) be discoverable under the laws of the foreign country that is the locus of the underlying proceeding." *Metallgesellschaft AG v. Hodapp (In re Metallgesellschaft AG)*, 121 F.3d 77, 79 (2d Cir. 1997) (citing *In re Application of Gianoli*, 3 F.3d 54, 59 (2d Cir. 1993)).

In short, the fact that EuroChem seeks discovery from Chauhan that it would not be permitted to take in the BVI—both because Chauhan is not subject to the jurisdiction of the courts and because the scope of discovery in those courts is much narrower than that permitted in the courts of the United States (*see* Hr'g Tr., Doc. No. 23, at 15)—does not establish that EuroChem is seeking discovery in this matter for an improper purpose. More to the point, Chauhan has failed to establish that the magistrate judge's findings of fact were clearly erroneous

or that she incorrectly applied controlling law in concluding that these factors weigh in favor of granting EuroChem's Application.

The objections based on the *Intel* discretionary factors are without merit.

## V. CONCLUSION

For the reasons set forth herein, the court will overrule the respondent's objections and affirm the magistrate judge's rulings. An appropriate Order is filed herewith.

It is so **ORDERED**.

ENTER this 15th day of August 2018.

_____
ALETA A. TRAUGER
United States District Judge